JS 44 (Rev. 12/07) (CAND Rev 1/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B.

**DEFENDANTS**
Richard Straub, an Individual and dba Straub Appraisal

ORIGINAL

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Solano
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Vanessa H. Widener (203967) / Jennifer S. Muse (211779)
Anderson, McPharlin & Conners LLP
444 South Flower St., Thirty-First Floor
Los Angeles, CA 90071-2901    Tele: 213-688-0080

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| [ ] 110 Insurance | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | | | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 195 Contract Product Liability | | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 550 Civil Rights | [ ] 463 Habeas Corpus – Alien Detainee | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Breach of Contract and Negligent Misrepresentation

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 851,153.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[X] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE   [ ] EUREKA

DATE: June 30, 2011
SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL

FILED
JUL -6 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

VANESSA H. WIDENER (Bar No. 203967)
vhw@amclaw.com
JENNIFER S. MUSE (Bar No. 211779)
jsm@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
Thirty-First Floor
444 South Flower Street
Los Angeles, California 90071-2901
TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for INDYMAC BANK, F.S.B.

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B.,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD STRAUB, an Individual and dba STRAUB APPRAISAL,<br><br>Defendants. | Case No. **C11-03295** MEJ<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT; AND**<br>2. **NEGLIGENT MISREPRESENTATION** |

Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, FSB ("FDIC") herein, for claims for relief against Defendant alleges as follows:

## COMMON ALLEGATIONS

### PARTIES

1. The FEDERAL DEPOSIT INSURANCE CORPORATION is a government entity appointed by the Office of Thrift Supervision to act as Receiver for INDYMAC BANK, F.S.B. ("INDYMAC") pursuant to 12 U.S.C. 1821(d)(2)(B).

1  The rights to pursue the claims identified in this Complaint were retained by or transferred to the FDIC.

2.  INDYMAC was a FDIC-insured financial institution which was authorized to do business in the State of California and in the County of Sacramento, among other counties.

3.  The FDIC is informed and believes and thereon alleges that Defendant RICHARD STRAUB dba STRAUB APPRAISAL is an individual who was and is now a resident of California. At all times relevant, STRAUB was engaged in the business of real estate appraisals, License No.: AR009456, and doing business in the Counties of Solano and Contra Costa, State of California under the fictitious business name STRAUB APPRAISAL. Defendant RICHARD STRAUB and his business/dba, STRAUB APPRAISAL, are collectively referred to herein as "STRAUB."

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 since all suits to which the FDIC is a party are deemed to arise under the law of the United States. (12 U.S.C. §1819(b)(2)(A).)

5.  Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391, in that STRAUB resides in the County of Solano, and the place of performance for all or some of the obligations sued upon was the County of Contra Costa. STRAUB is subject to personal jurisdiction in this district at the time the action is commenced and has sufficient minimum contacts with the County of Solano.

/ / /
/ / /
/ / /
/ / /

## FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)
### (Hornbrook Appraisal)

6. The FDIC realleges and incorporates by reference paragraphs 1 through 5, inclusive, of this Complaint.

7. In or about June 2007, STRAUB contracted with Diablo Funding Group to prepare a written Uniform Residential Appraisal Report ("Hornbrook Appraisal") for the real property located at 14 Woodranch Lane, Danville, California 94506 ("Danville Property"). STRAUB prepared the Hornbrook Appraisal and in exchange received valuable consideration.

8. In entering into the agreement, STRAUB knew the Hornbrook Appraisal would be used by a lender to evaluate the value of the Danville Property in connection with a mortgage finance transaction.

9. On or about June 20, 2007, STRAUB prepared the Hornbrook Appraisal which valued the Danville Property at $1,150,000. The Hornbrook Appraisal was submitted to INDYMAC for the purpose of facilitating a mortgage finance transaction.

10. In reliance on the Hornbrook Appraisal prepared by STRAUB, on or about August 1, 2007, INDYMAC purchased a mortgage loan in the amount of $920,000 secured by the Danville Property (the "Hornbrook Loan").

11. The Hornbrook Appraisal provided by STRAUB expressly certified, acknowledged and agreed as follows:

\*\*\*

> 21. The lender/client may disclose or distribute this appraisal report to: … another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants …without having to get the appraiser's consent …
>
> 23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and

other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability....

12. The Hornbrook Appraisal was thus made for the benefit of the third parties who would rely upon it in the secondary mortgage market, and the end aim of the contract was the making of a loan that could be sold in the secondary mortgage market.

13. STRAUB breached the contract in that the Hornbrook Appraisal: (1) misrepresented the value of the Danville Property; (2) used improper and negligently selected comparable sales; and (3) did not comply with the Uniform Standards of Professional Appraisal Practice. Among other things,

    a. STRAUB failed to disclose and analyze the Danville Property's listing history. The property was first listed in early 2006 for $979,000 and no sale resulted. The price was subsequently reduced to $959,000 in early 2007. Neither of these material facts was disclosed by STRAUB.

    b. STRAUB used comparable properties that were situated on significantly larger lot sizes than the Danville Property and were not comparable to the Danville Property.

    c. STRAUB failed to make adequate adjustments to value.

    d. STRAUB had available comparable sales which were similar in characteristics to the Danville Property, but did not use them.

14. All obligations owed to STRAUB as required by the Hornbrook Appraisal were performed and completed, except those acts or obligations which were excused by STRAUB's breach of the agreement.

15. The FDIC, as INDYMAC's successor-in-interest, suffered foreseeable damage on the Hornbrook Loan as a result of STRAUB's breach of the

1  agreement. The FDIC has suffered damages on the Hornbrook Loan in an amount
2  to be proven at trial but no less than $426,911.22, plus interest, costs, and attorneys'
3  fees.

### SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)
### (Lopez Appraisal)

16. The FDIC realleges and incorporates by reference paragraphs 1 through 15, inclusive, of this Complaint.

17. In or about September 2007, STRAUB contracted with Streemline Corp. to prepare a written Uniform Residential Appraisal Report ("Lopez Appraisal") for the real property located at 1907 Ohio Avenue, Richmond, California 94804 ("Richmond Property"). STRAUB prepared the Lopez Appraisal and in exchange received valuable consideration.

18. In entering into the agreement, STRAUB knew the Lopez Appraisal would be used by a lender to evaluate the value of the Richmond Property in connection with a mortgage finance transaction.

19. On or about September 1, 2007, STRAUB prepared the Lopez Appraisal which valued the Richmond Property at $535,000. The Lopez Appraisal was submitted to INDYMAC for the purpose of facilitating a mortgage finance transaction.

20. In reliance on the Lopez Appraisal prepared by STRAUB, on or about November 19, 2007, INDYMAC funded a mortgage loan in the amount of $481,500 which was secured by the Richmond Property (the "Lopez Loan").

21. The Lopez Appraisal provided by STRAUB expressly certified, acknowledged and agreed as follows:

***

> 21. The lender/client may disclose or distribute this appraisal report to: ... another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored

enterprises, and other secondary market participants …without having to get the appraiser's consent ...

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability….

22. The Lopez Appraisal was thus made for the benefit of the third parties who would rely upon it in the secondary market, and the end aim of the contract was the making of a loan that could be sold in the secondary mortgage market.

23. STRAUB breached the contract in that the Lopez Appraisal: (1) misrepresented the value of the Richmond Property; (2) used improper and negligently selected comparable sales; and (3) did not comply with the Uniform Standards of Professional Appraisal Practice. Among other things,

a. STRAUB did not disclose a complete listing history of the Richmond Property. The Richmond Property was originally listed in the local multiple listing service ("MLS") on May 3, 2006 for $499,000 and expired on August 4, 2006. The Richmond Property was later listed for $489,950 on November 8, 2006, which also expired. The Richmond Property was re-listed on March 13, 2007 for $459,000 and subsequently expired. Finally, the Richmond Property was listed for $550,000 on May 21, 2007 and again expired. STRAUB was aware of the complete listing history of the Richmond Property, but nevertheless only reported the most recent and highest listing of the Richmond Property of $550,000 in the Lopez Appraisal.

b. STRAUB misrepresented the distances of all four comparables used in the Lopez Appraisal. Comparables 1, 2 and 4 were located outside the

1 neighborhood of the Richmond Property, across an active rail line. Comparable 3 was located half a mile south of the Richmond Property across a major thoroughfare. These features were not disclosed in the Lopez Appraisal.

       c.    Comparables 1 and 4 were not true comparable properties in that they were located in superior neighborhoods to the Richmond Property, with better kept, landscaped homes on tree-lined streets. STRAUB did not make any downward adjustments to the value of the Lopez Property for its inferior location, smaller size and older age as compared with the comparable properties used.

       d.    STRAUB had available comparable sales which were more recent and/or more similar in characteristics to the Richmond Property than the comparables used by STRAUB, but STRAUB did not use them.

24.    All obligations owed to STRAUB as required by the Lopez Appraisal were performed and completed, except those obligations which were excused by STRAUB's breach of the agreement.

25.    The FDIC, as INDYMAC's successor-in-interest, suffered foreseeable damage on the Lopez Loan as a result of STRAUB's breach of the agreement. The FDIC has suffered damages on the Lopez Loan in an amount to be proven at trial but no less than $424,242.59, plus interest, costs, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### (NEGLIGENT MISREPRESENTATION)
### (Hornbrook Appraisal)

26.    The FDIC realleges and incorporates by reference paragraphs 1 through 25, inclusive, of this Complaint.

27.    On or about June 20, 2007, STRAUB prepared the Hornbrook Appraisal which misrepresented the value the Danville Property at $1,150,000. The appraiser's certification attached to the Hornbrook Appraisal represents, among other things, that STRAUB:

7

\*\*\*

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice....

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this assignment....

\*\*\*

6. I researched, verified, analyzed and reported the prior sales of the comparable sales for the minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in the report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

\*\*\*

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the difference between the subject property and the comparable sales.

\*\*\*

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area where the property is located.

\*\*\*

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions...observed during the inspection of the subject property or that I became

8

aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this report are true and correct.

\*\*\*

21. The lender/client may disclose or distribute this appraisal report to: ... another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants ...without having to get the appraiser's consent ...

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

\*\*\*

24. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability....

28. The Hornbrook Appraisal was submitted to INDYMAC in connection with the Hornbrook Loan. In preparing the Hornbrook Appraisal, STRAUB owed INDYMAC a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct of an appraiser prevailing in the industry. In breach of that duty, the Hornbrook Appraisal contained numerous material misrepresentations, failures and deficiencies including, but not limited to, violations of the Uniform Standards of Professional Appraisal Practice; negligently misrepresenting the value of the Danville Property; failing to use and analyze appropriate comparable sales; and neglecting to address the prior sales history of the Danville Property. Among other things,

    a.    STRAUB failed to disclose and analyze the Danville Property's

9

1 listing history. The property was first listed in early 2006 for $979,000 and no sale
2 resulted. The price was subsequently reduced to $959,000 in early 2007. Neither of
3 these material facts was disclosed by STRAUB.

   b.   STRAUB also used comparable properties that were situated on significantly larger lot sizes than the Danville Property and were not comparable to the Danville Property.

   c.   STRAUB failed to make adequate adjustments to value.

   d.   STRAUB had available comparable sales which were similar in characteristics to the Danville Property, but did not use them.

29.   At the time STRAUB prepared the Hornbrook Appraisal, he had no reasonable grounds for believing the representations were true. These representations were material to INDYMAC's decision to purchase the Hornbrook Loan and STRAUB intended for INDYMAC to rely on the representations made in the Hornbrook Appraisal as part of the mortgage finance transaction.

30.   INDYMAC reasonably relied on the representations made by STRAUB in the Hornbrook Appraisal in deciding to purchase the Hornbrook Loan and INDYMAC further relied upon STRAUB to conduct business in accordance with the duty of care implied by the law and the custom of the appraisal industry, and believed that the information submitted by STRAUB was true and had been reviewed and prepared in accordance with the Uniform Standards of Professional Appraisal Practice and other standards prevalent in the appraisal industry.

31.   The FDIC, as successor-in-interest to INDYMAC, has been damaged because INDYMAC relied upon the representations made by STRAUB and the proper performance by STRAUB of his professional duties in making the decision to purchase the Hornbrook Loan. The FDIC's damages on the Hornbrook Loan are presently believed to be in excess of $426,911.22, plus interest, costs, and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

## (NEGLIGENT MISREPRESENTATION)

### (Lopez Appraisal)

32. The FDIC realleges and incorporates by reference paragraphs 1 through 31, inclusive, of this Complaint.

33. On or about September 1, 2007, STRAUB prepared the Lopez Appraisal which valued the Richmond Property at $535,000. The appraiser's certification attached to the Lopez Appraisal represents, among other things, that STRAUB:

> 2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.
>
> 3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice….
>
> 4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this assignment….
>
> \*\*\*
>
> 6. I researched, verified, analyzed and reported the prior sales of the comparable sales for the minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in the report.
>
> 7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.
>
> \*\*\*
>
> 9. I have reported adjustments to the comparable sales that reflect the market's reaction to the difference between the subject property and the comparable sales.
>
> \*\*\*

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area where the property is located.

\*\*\*

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions…observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this report are true and correct.

\*\*\*

21. The lender/client may disclose or distribute this appraisal report to: … another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants …without having to get the appraiser's consent ...

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

\*\*\*

24. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability….

34. The Lopez Appraisal was submitted to INDYMAC in connection with the Lopez Loan. In preparing the Lopez Appraisal, STRAUB owed INDYMAC a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct of an appraiser prevailing in the industry. In

breach of that duty, the Lopez Appraisal contained numerous material misrepresentations, failures and deficiencies including, but not limited to, violations of the Uniform Standards of Professional Appraisal Practice; negligently misrepresenting the value of the Richmond Property; and failing to use and analyze appropriate comparable sales. Among other things,

   a.   STRAUB did not disclose a complete listing history of the Richmond Property. The Richmond Property was originally listed in the local MLS on May 3, 2006 for $499,000 and expired on August 4, 2006. The Richmond Property was later listed for $489,950 on November 8, 2006, which also expired. The Richmond Property was re-listed on March 13, 2007 for $459,000 and subsequently expired. Finally, the Richmond Property was listed for $550,000 on May 21, 2007 and again expired. STRAUB was aware of the complete listing history of the Richmond Property, but nevertheless only reported the most recent and highest listing of the Richmond Property of $550,000 in the Lopez Appraisal.

   b.   STRAUB misrepresented the distances of all four comparables used in the Lopez Appraisal. Comparables 1, 2 and 4 were located outside the neighborhood of the Richmond Property, across an active rail line. Comparable 3 was located half a mile south of the Richmond Property across a major thoroughfare. These features were not disclosed in the Lopez Appraisal.

   c.   Comparables 1 and 4 were not true comparable properties in that they were located in superior neighborhoods to the Richmond Property, with better kept, landscaped homes on tree-lined streets. STRAUB did not make any downward adjustments to the value of the Lopez Property for its inferior location, smaller size and older age as compared with the comparable properties used.

   d.   STRAUB had available comparable sales which were more recent and/or more similar in characteristics to the Richmond Property than the comparables used by STRAUB, but STRAUB did not use them.

35.   At the time STRAUB prepared the Lopez Appraisal, he had no reasonable grounds for believing the representations were true.  These representations were material to INDYMAC's decision to purchase the Lopez Loan and STRAUB intended for INDYMAC to rely on the representations made in the Lopez Appraisal as part of the mortgage finance transaction.

36.   INDYMAC reasonably relied on the representations made by STRAUB in the Lopez Appraisal in deciding to purchase the Lopez Loan and INDYMAC further relied upon STRAUB to conduct business in accordance with the duty of care implied by the law and the custom of the appraisal industry, and believed that the information submitted by STRAUB was true and had been reviewed and prepared in accordance with the Uniform Standards of Professional Appraisal Practice and other standards prevalent in the appraisal industry.

37.   The FDIC, as success-in-interest to INDYMAC, has been damaged because INDYMAC relied upon the representations made by STRAUB and the proper performance by STRAUB of his professional duties in making the decision to purchase the Lopez Loan.  The FDIC's damages on the Lopez Loan are presently believed to be in excess of $424,242.59, plus interest, costs, and attorneys' fees.

**WHEREFORE,** the FDIC prays for judgment against STRAUB as follows:

1.   For general, compensatory, and consequential damages, according to proof at trial in an amount to be proven at trial, plus interest, costs and attorneys fees;

2.   For its costs of suit incurred herein;

3.   For its reasonable attorneys' fees as allowed by law;

4.   For prejudgment interest at the legal rate allowable; and

///

14

5. For such other and further relief as the court deems just and proper.

DATED: June 30, 2011

ANDERSON, McPHARLIN & CONNERS LLP

By: _____
Vanessa H. Widener
Jennifer S. Muse
Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for INDYMAC
BANK, F.S.B.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

879778.1 NYA.NYA

15